IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:09CR3117 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **BRIEF IN SUPPORT OF DEFENDANT'S VARIANCE MOTION** |
| TRAVES RUSH, | ) ) | |
| Defendant. | ) | |

Defendant Traves Rush (Rush), through undersigned counsel, submits the following brief in support of his motion to vary to a lower (than the sentencing guidelines) sentence.

## FACTS

Defendant Traves Rush has been convicted of bank robbery. His Presentence Investigation Report (PSR) calculates a total offense level of 28, criminal history category (CHC) VI, resulting in a guideline imprisonment range of 140 - 175 months. However, the probation office believes that Rush is a career offender, increasing his total offense level by four levels to a 32. A total offense level 32, CHC VI, creates a guideline imprisonment range of 210 - 240 months (because of the 20 year statutory maximum). Rush has objected to virtually all of the calculations within his PSR, but makes this variance motion based upon the 18 U.S.C. § 3553(a) factors relevant to his case. Rush suggests that a sentence of 10 years is more than adequate to promote the goals of sentencing under the federal sentencing statutes.

Noteworthy to Rush's variance motion are the sentences imposed on the other two defendants convicted of this bank robbery. Marcus Short was sentenced by this Court to 70 months imprisonment on July 7, 2010. Curtis Cotton was sentenced to 60 months imprisonment on May 26, 2010. In the context of the sentences received by Rush's co-

defendants, he suggests that a sentence of 120 months is appropriate and fulfills the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Rush is 27 years old and was basically raised by various family members in north Omaha. His criminal history reflects that he was involved with the law for shoplifting offenses at age 12 and then proceeded to become involved with much more serious crimes by the time he was 16. Thereafter, Rush was incarcerated in the juvenile court system and then the adult criminal system because of poor choices he made as a youth and young adult. Encompassing many of Rush's poor decisions was the cultural and social setting of growing-up in north Omaha.

Mary Rush, Traves' mother, related the following about her son. Traves was raised in a single parent family. His father did not live in Omaha and was basically uninvolved in Traves' life. He is the only boy of 4 children and is the 3rd child. He was born in Jonestown, MS, and moved to Omaha when he was 3 years old. Traves reached all infant/toddler milestones on time, such as crawling, walking, talking, etc. The family lived on N. 60th Street in an apartment complex for the entirety of Traves' youth.

Mary worked part-time until Traves was in 6th grade when she then became employed full-time. Melinda (the oldest sibling and approximately 11 years older than Traves) was responsible for caring for the children when Mary was at work. The children were expected to go to school and, when old enough, be employed.

Traves wrestled for the Bears (an elite team in Omaha) when he was in elementary school. He loved basketball and model cars. Traves received very good grades (A's) in the subjects in which he was interested (math, science, human growth); and the subjects he was not interested in he either failed or received poor grades. Due to Traves getting in

2

trouble for stealing, he received his GED while he was in the Youth Development Center in Kearney.  When Traves was in 7th grade, Mary took him to Immanuel Hospital for a psychiatric evaluation because he was fidgety and hyper.  Mary stated he always had to have something in his hands to play with.  Mary advised nothing ever came of the evaluation that she remembers.  She does not recall reading a report.  The psychiatrist did not prescribe any medication nor did he suggest any counseling.  Mary recalls that the psychiatrist may have mentioned something about Traves being hyperactive or possibly having ADD.

At the age of 14, Traves began working for a family friend at a barbershop.  It was at this time that he saw adults and older teens coming to the barbershop flashing their money, driving nice cars and wearing designer clothing and nice jewelry.  These same adults and older teens would offer Traves money to steal car parts, stereos, and clothing.  Traves liked the idea of having money (to buy model car kits, clothes and jewelry).  Thus, he did what the adults and older teenagers told him (and paid him) to do.  Mary told of an incident where she found a list of things in Traves' pants pocket and confronted him about what the list was.  Traves told her it was a list of things that he was supposed to steal for someone.  Mary stated "they would talk him into doing anything."

Traves started talking about his "homey's in the hood" when he was approximately 15 or 16 years old.  Mary stated, however, Traves was not involved in gangs and she was unaware of any drugs or alcohol usage.

Mary stated that Traves acted first and thought later.  She advised she and other family members had many conversations with Traves regarding this issue.

## ARGUMENT

Following United States v. Booker, 543 U.S. 220 (2005), the guidelines are no longer mandatory. Thus, under an advisory guideline sentencing scheme, the guidelines are simply one factor to consider along with the other sentencing factors listed in 18 U.S.C. § 3553(a). While a sentence within the guideline range may be reasonable, "it does not follow that a sentence outside the guideline range is unreasonable." United States v. Myers, 439 F.3d 415, 417 (8th Cir. 2006). Sentences varying from the guideline range are reasonable if the district court offers justification based upon the factors set-forth in § 3553(a). United States v. Rogers, 448 F.3d 1033, 1035 (8th Cir. 2006). If a sentence varies from the advisory guideline range, an appellate court looks at the totality of the circumstances, including the extent of any variance from the guideline range, while giving due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. Gall, 128 S.Ct. at 595, 597.

In Gall v. United States,128 S.Ct. 586 (2007), the Supreme Court explained how sentencing in the district court should proceed. First, a district court must accurately calculate the applicable guideline range. Gall, 128 S.Ct. at 596. After considering the correct guideline range, the district court must then consider all of the factors under 18 U.S.C. § 3553(a) to determine the appropriate sentence. Id. The district court "must make an individualized assessment based on the facts presented." Id. at 597. If the district court determines that a sentence outside the guidelines is most appropriate, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id.

Judges may now consider arguments that the applicable guidelines fail properly to reflect 18 U.S.C. § 3553(a) considerations, reflect an unsound judgment, do not treat

defendant characteristics in the proper way or that a non-guideline sentence is appropriate. Rita v. United States, 127 S. Ct. 2456, 2465, 2468 (2007).  Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines, " Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) (internal quotation marks omitted); and when they do, the courts of appeals may not "grant greater fact finding leeway to [the Commission] than to [the] district judge."  Rita, 127 S. Ct. at 2463.

In United States v. Jones, 531 F.3d 163 (2nd Cir. 2008), the defendant was convicted of possessing more than five grams of crack cocaine and was sentenced to 121 months imprisonment.  Jones' sentence was vacated in part and remanded because of ambiguities in the sentencing record.  When the Second Circuit examined Jones' reasonableness challenge to his sentence, the Court stated as follows:

> Like the Sixth Circuit, sitting en banc in United States v. Vonner, we think "[o]ne theme runs through" Rita, Gall, and Kimbrough:
>
> Booker empowered district courts, not appellate courts and not the Sentencing Commission.  Talk of presumptions, plain error and procedural and substantive rules of review means nothing if it does not account for the central reality that Booker breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the § 3553(a) factors to the criminal defendants that come before them.  If there is a pattern that emerges from Rita, Gall, and Kimbrough, it is that the district court judges were vindicated in all three cases.... [T]he central lesson from these decisions [is] that district courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them.

Jones at 171 n. 5.  See also, United States v. Feemster, 572 F.3d 455 (8th Cir. 2009)(en banc).

5

Judges are now embracing this invitation to vary from the guidelines in a wide variety of situations.[1] A reasoned judicial determination that a particular guideline reflects unsound judgment in light of § 3553(a) considerations results in a more just and effective sentence in the individual case; and, by providing feedback to the Sentencing Commission, serves

---

[1] See United States v. Mondragon-Santiago, 564 F.3d 357 (5th Cir. Mar. 26, 2009) (all guidelines, including § 2L1.2); United States v. White, 551 F.3d 381, 386 (6th Cir. 2008) (all guidelines); United States v. Seval, slip op., 2008 WL 4376826 (2d Cir. Sept. 25, 2008) (fast track); United States v. Vanvliet, 542 F.3d 259 (1st Cir. 2008) (computer enhancement under § 2G1.3); United States v. Liddell, 543 F.3d 877 (7th Cir. 2008) (career offender); United States v. Tankersley, 537 F.3d 1100 (9th Cir. 2008) (all guidelines); United States v. Jones, 531 F.3d 163 (2d Cir. 2008) (all guidelines); United States v. Boardman, 528 F.3d 86, 87 (1st Cir. 2008) (career offender); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008) (fast track and all guidelines); United States v. Martin, 520 F.3d 87, 88-96 (1st Cir. 2008) (career offender); United States v. Smart, 518 F.3d. 800, 808-09 (10th Cir. 2008) (all guidelines); United States v. Sanchez, 517 F.3d 651, 662-65 (2d Cir. 2008) (career offender); United States v. Marshall, slip op., 2008 WL 55989 at **8-9 (7th Cir. Jan. 4, 2008) (career offender); United States v. Barsumyan, 517 F.3d 1154, 1158-59 (9th Cir. 2008) (all guidelines); United States v. Beiermann, 599 F.Supp.2d 1087(N.D. Iowa Feb. 24, 2009) (child pornography);  United States v. Moreland, 568 F. Supp. 2d 674 (S.D. W. Va. 2008) (career offender); United States v. Malone, slip op., 2008 U.S. Dist. LEXIS 13648 (E.D. Mich. Feb. 22, 2008) (career offender); United States v. Cabrera, 567 F.Supp.2d 271 (D. Mass. 2008) (over-emphasis on drug quantity, under-emphasis on minimal role); United States v. Grant, slip op., 2008 WL 2485610 (D. Neb. June 16, 2008) (second degree murder guideline); United States v. Shipley, 560 F. Supp. 2d 739 (S.D. Iowa June 19, 2008) (child pornography); United States v. Rausch, 570 F. Supp. 2d 1295 (D. Colo. Aug. 13, 2008) (child pornography); United States v. Hanson, 561 F.Supp.2d 1004 (E. D. Wis. June 20, 2008) (child pornography); United States v. Ontiveros, 2008 WL 2937539 (E.D. Wis. July 24, 2008) (child pornography); United States v. Taylor, 2008 WL 2332314 (S.D.N.Y. June 2, 2008) (child pornography); United States v. McClelland, 2008 WL 1808364 (D. Kan. April 21, 2008 (child pornography); United States v Baird, slip op., 2008 WL 151258 (D. Neb. Jan. 11, 2008) (child pornography); United States v. Parris, 573 F. Supp. 2d 744, 751 (E.D.N.Y. 2008) (fraud guideline); United States v. Grober, 595 F.Supp.2d 382 (D. N.J. Dec. 22, 2008) (child pornography); United States v. Doktor, slip op., 2008 WL 5334121 (M.D.Fla. Dec. 19, 2008) (child pornography); United States v. Johnson, 588 F.Supp.2d 997 (S.D. Iowa Dec. 4, 2008) (child pornography); United States v. Stern, 590 F.Supp.2d 945 (N.D. Ohio 2008) (child pornography).

a core function in the constructive evolution of responsible guidelines.  See, Rita, 127 S. Ct. at 2464, 2465, 2468-69; Kimbrough, 128 S. Ct. at 573-74.

With the previous sentencing principles in mind, the factors unique to Rush's life decisions may be more closely examined.

Traves Rush obviously came from a social and cultural background that, despite directives from his mom and sister, heavily influenced his decision making as a youth and into his early adult life.  While he was able to generally escape the influence of alcohol, drugs and gangs, he obviously made poor choices when it came to his ability to escape the lure of easy money and a criminal lifestyle.  To some degree, this decision making on Rush's part may have been influenced by his constant hyperactivity as noticed by his mother and siblings.  This is a circumstance the Court may consider under 18 U.S.C. § 3553(a) when examining the history and characteristics of the defendant.  While Rush's troubled upbringing may cause the Government to argue that he should be locked-up for a longer period of time, this Court may also consider such circumstances to determine if a lower sentence is warranted.  It is the defendant's position that a sentence even at the low end of a 210- 240 month guideline range is far greater than is necessary to achieve the sentencing goals set forth in § 3553(a).  Moreover, Rush's wanton upbringing obviously played some role in the rebellious predicaments he has found himself to be in beginning at a very young age.

Much research has been conducted regarding the circumstance of young black males in American society–especially when there is no positive male role model to provide guidance.  See generally, Culturally Congruent Strategies for Addressing the Behavioral Needs of Urban, African American Male Adolescents, Day-Vines, Norma L., Feb. 2005

found at [www.schoolcounselor.org/files/8-3-236 DayVines.pdf](www.schoolcounselor.org/files/8-3-236 DayVines.pdf).  Rush is a prime example of this cultural phenomenon.  Accordingly, based upon Traves Rush's life circumstance and history and characteristics, he seeks a lower sentence pursuant to 18 U.S.C. § 3553(a).

## CONCLUSION

Based upon the foregoing argument, Traves Rush respectfully requests this Court to vary to a sentence of 120 months in this case.

Dated this 23rd day of July, 2010.

>
> TRAVES RUSH, Defendant,
>
> By: */s/John C. Vanderslice*
> **John C.  Vanderslice**
> **Assistant Federal Public Defender**
> 112 Federal Building
> 100 Centennial Mall North
> Lincoln, Nebraska 65808
> 402-437-5871
> Attorney for Defendant

## CERTIFICATE OF SERVICE

Assistant Federal Public Defender John Vanderslice hereby certifies that the foregoing document was filed with the Clerk of the District Court using the CM/ECF system which sent notification of such filing to AUSA Alan Everett on this 23rd day of July, 2010.

*s/ John C. Vanderslice*