IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 4:09CR3117 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | BRIEF IN RESPONSE TO |
| | ) | DEFENDANT'S OBJECTIONS |
| TRAVES RUSH, | ) | TO PRESENTENCE REPORT |
| | ) | |
| Defendant. | ) | |

**Dangerous Weapon**

In his objections to the Revised Pre-Sentence Report (PSR), the Defendant objects to the three-level enhancement for possession of a dangerous weapon during the bank robbery (paragraphs 19 and 33 of the PSR). It is undisputed that co-defendant Cotton did possess a claw hammer during the bank robbery. In fact, Cotton testified he was given the hammer by Rush, with instructions to control the people in the bank. Cotton's testimony during the trial clearly establishes the factual basis for the guideline enhancement. Furthermore, as discussed below, both the plain language of the guidelines, and the interpretation of this language by various circuit courts, clearly illustrate the appropriateness of the enhancement in this case.

The PSR assesses a three-level enhancement for possession of a "dangerous weapon" pursuant to U.S.S.G. § 2B3.1(b)(2)(E).[1]  Application Note 1 to this guideline provision refers to U.S.S.G. § 1B1.1 for the definition of "dangerous weapon." Application Note 1(D) to U.S.S.G. § 1B1.1 defines "dangerous weapon" in part to mean "an instrument capable of inflicting death or

---

[1] A four level increase is assessed when a "dangerous weapon" is "otherwise used." U.S.S.G. § 2B3.1(b)(2)(D).

serious bodily injury."  A number of circuit courts have found hammers and similar devices to constitute "dangerous weapons" within the meaning of these guideline provisions.

In <u>United States v. Clayton</u> 105 F.3d 648, 1997 WL 3228 (4th Cir. 1997) (unpublished), one of Clayton's co-defendants carried a dry-wall hammer during the robbery of a post office, and the co-defendant also stated during the robbery that he possessed a gun (no gun was actually possessed during the robbery).  The Fourth Circuit upheld the trial court's assessment of a four-level increase in Clayton's offense level for use of a dangerous weapon during the robbery, pursuant to U.S.S.G. § 2B3.1(b)(2)(D).

In <u>United States v. Mershon</u> 2009 WL 1059549 (3rd Cir. 2009) (unpublished), the defendant was convicted of attempted car jacking and conspiracy to interfere with interstate commerce by robbery.  He had been arrested as he was just about to commit the robbery and a claw hammer wrapped in a sock was found in his van.  The trial court assessed a three-level increase for possession of a dangerous weapon, and this issue was not pursued on appeal.

In <u>United States v. Lavender</u> 224 F.3d 939 (9th Cir. 2000), the defendant possessed a screwdriver during a bank robbery, in case it was needed to steal a get away vehicle (according to the defendant).  Lavender's two co-defendants contended they did not know Lavender possessed the screwdriver during the bank robbery, therefore the dangerous weapon enhancement should not be applied to them.  The Ninth Circuit rejected this argument and held the dangerous weapon enhancement applicable to all co-defendants, and rejected the defense's argument that the enhancement applies only if the defendant <u>intended</u> to use the screwdriver as a weapon.  The court noted that a screwdriver is indeed capable of inflicting death or serious bodily injury, therefore the defendants' intended use of it is irrelevant.

In United States v. Thurman 2001 WL 690382 (10th Cir. 2001) (unpublished), the defendant possessed, during a bank robbery, two dinner knives which had been taped together at the handles. He used this device to pry open a cash drawer, but never pointed it at any bank employees. The Tenth Circuit ruled the sentence enhancement for possession of a dangerous weapon was appropriate because it does not matter how the defendant used the knives or how he intended to use them. The court noted that the guideline enhancement is an effort to discourage bank robbers from carrying a weapon and the plain language of the guideline only requires the weapon to be possessed during the crime.

In United States v. Pope 554 F.3d 240 (2nd Cir. 2009), the defendant used a sledgehammer to break into a bank, and was convicted of bank burglary. His sentence was enhanced for possession of a dangerous weapon during the burglary - the sledgehammer. The defendant argued a sledgehammer is not inherently a weapon, he did not intend to use it as a weapon, therefore the guideline enhancement was inappropriate. The Second Circuit rejected this argument and found the fact that the defendant did not use the sledgehammer as a weapon is irrelevant. The court found a sledgehammer to constitute a dangerous weapon, and since the defendant possessed it during the crime the enhancement applies.

In United States v. Johnson 199 F.3d 123 (3rd Cir. 1999), the court found a sledgehammer and baseball bat carried during the crime of robbery to be dangerous weapons within the definition of U.S.S.G. § 1B1.1.

### Career Offender

It is well-settled in the Eighth Circuit that burglary is a crime of violence under § 4B1.2 of the United States Sentencing Guidelines because it creates a "serious risk of physical injury to

another." *United States v. Mohr*, 382 F.3d 857, 860 (8th Cir. 2004), *rev'd on other grounds*, (citing *United States v. Hascall*, 76 F.3d 902, 905 (8th Cir. 1996)); *see United States v. Blahowski*, 324 F.3d 592, 594-95 (8th Cir. 2003), *cert denied*, 540 U.S. 934 (2003); *United States v. Grummitt*, 390 F.3d 569, 571 (8th Cir. 2004). The Supreme Court described one of the risks of burglary as "the possibility of a face-to-face confrontation between the burglar and a third party. . . " *James v. United States*, 550 U.S. 192, 203 (2007).

More broadly, the Eighth Circuit has asserted a "generic burglary" of non-residential structures is also "a crime of violence" within the meaning of the "otherwise provides" clause in § 4B1.2(a)(2). *See United States v. Stymiest*, 581 F.3d 759, 768-69 (8th Cir. 2009)*; United States v. Whetzell*, 594 F.3d 624, 626 (8th Cir. 2010); *United States v. LeGrand*, 468 F.3d 1077, 1082 (8th Cir. 2006); *United States v. Bell*, 445 F.3d 1086, 1090-91 (8th Cir. 2006). Circuits have differed on this issue. *See United States v. Giggey*, 551 F.3d 27, 29 (1st Cir. 2008) (outlining circuit split of whether burglary of a non-residential structure is a crime of violence). The definition of a "generic burglary" derives from *Taylor v. United States*. 495 U.S. 575, 598 (1990) ("[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime").

Furthermore, a "burglary of a dwelling", one of the enumerated crimes in U.S.S.G. § 4B1.2(a)(2), has been uniformly interpreted to constitute a "crime of violence" for two reasons. First, the definition "crime of violence" located in § 4B1.2 explicitly includes "burglary of a dwelling." U.S.S.G. § 4B1.2(a)(2) (2009); *see Blackmon v. United States*, 2008 WL 4792640 at *4 (E.D. Mo. 2008); *United States v. Miller*, 2010 WL 1817928 at *5 (D.Neb. 2010) ("A conviction for

4

an offense enumerated in . . . the Guidelines also counts under the definition of . . . "crime of violence"") (internal citations omitted). Second, the commentary supplementing § 4B1.2 expressly states "for the purposes of this guideline . . . 'crime of violence' includes . . . burglary of a dwelling." U.S.S.G. § 4B1.2 cmt. n. 1 (2009). The Eighth Circuit has relied on the commentary underlying § 4B1.2 as "persuasive authority" in determining what constitutes a crime of violence. See *United States v. Vincent*, 575 F.3d 820, 826 (8th Cir. 2009).

The only possible issue in this case is whether the Nebraska burglary statute is broader or narrower than the generic definition of burglary. *See* Neb. Rev. Stat. § 28-507. The Supreme Court has noted if a state burglary statute is narrower than the generic burglary definition, no problem exists. *Taylor*, 495 U.S. at 599. On the other hand, if a state burglary statute is broader than the generic definition, and a defendant was convicted for burglary under such statute that is outside the scope of the generic definition, a defendant's prior conviction may be overinclusive. *See United States v. Kriens*, 270 F.3d 597, 605 (8th Cir. 2001) ("It is not enough that under Iowa law a defendant *could* have been convicted under a Burglary statute for conduct falling outside our generic definition of burglary . . . [defendant] was obligated to show he *was* convicted of conduct falling outside the definition"). As a result, a court could determine that a prior burglary conviction was not a crime of violence for career offender purposes because the conviction was not consonant with the generic burglary definition.

However, it is clear the Nebraska burglary statute, Neb. Rev. Stat. § 28-507, is congruous with the generic burglary definition outlined by the Supreme Court in *Taylor*. Under the Nebraska statute, "a person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with

intent to steal property of any value." Despite the lack of statutory definitions for "real estate" or "improvements", the plain meaning of these terms likely does not involve "motor vehicles, watercraft, aircraft, railroad cars, trailers, and tents". *Stymiest*, 581 F.3d at 768 (discussing the possible over-inclusiveness of a South Dakota third degree burglary statute that includes such objects). Most important, in the cases that address this issue, defendants have always challenged previous burglary convictions that did not take place at an occupied residential home. *See e.g. Stymiest*, 581 F.3d at 767 (examining whether burglary of an unoccupied structure is a crime of violence); *Bell*, 445 F.3d at 1088 (determining a burglary of a commercial building is a crime of violence).

In this case, Rush's convictions were specifically related to burglaries of a residential home. Presentence Investigation Report, ¶56, 58. Rush was arrested for burglary in 2006 and 2007 at residential homes in Omaha, Nebraska, and was convicted for these two burglaries in 2007. *Id*. In the 2006 case, the home was occupied; in 2007, officers responded to a burglary call. *Id*. As such, it is clear his two previous burglary convictions are burglaries of a dwelling, and therefore, "crime[s] of violence" under § 4B1.2.

                    Respectfully submitted,

                    UNITED STATES OF AMERICA,

BY:    DEBORAH R. GILG
         United States Attorney, D.NE.

And:   s/Alan L. Everett
         ALAN L. EVERETT #15387
         Assistant United States Attorney
         487 Federal Building
         100 Centennial Mall North
         Lincoln, NE  68508
         (402) 437-5241    Fax: (402) 437-5390

CERTIFICATE OF SERVICE

      I, Alan L. Everett, hereby certify that on July 23, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

John Vanderslice

and I hereby certify that I have electronically mailed the document to the following non CM/ECF participants:

Craig Ford

                    s/Alan L. Everett
                    ALAN L. EVERETT #15387
                    Assistant United States Attorney